Judge Hawkins, and may it please the Court, I'm David Frederick for Powerex, and I have ceded five minutes of my time to the United States. Mr. Mark Stern of the Civil Division at Main Justice will be arguing for the United States in support of Powerex's entitlement to organ status under the FSIA. Since the briefing was completed in this case, three significant developments have occurred in the case. The first is that the Supreme Court granted certiorari to review this Court's decision in NRG Energy, and it vacated that decision on grounds that the Court lacked appellate jurisdiction. Secondly, two justices of the Court disagreed with the majority on appellate jurisdiction and reached the merits and disagreed with the NRG Energy panel's conclusions with respect to Powerex's organ status. Justices Breyer and Stevens wrote an opinion explaining why they thought that Powerex was entitled to status as an organ of a foreign state. And the third development is that the United States has filed an amicus brief in support of Powerex's position. So as the case comes to this Court, three governments, British Columbia, Canada, and the United States support Powerex's entitlement to status under the FSIA as an organ of a foreign state. And we respectfully submit that the NRG Energy panel was incorrect in concluding otherwise. I would like to start, if I could, with the all-important factor of the creation of the entity. Powerex was ‑‑ Before you start, could you just report to us on the status of litigation in state court concerning this issue, what's before us, the similarity, the parallel? Well, the case was remanded. There was no stay of the remand. Litigation occurred on a demurrer. That was subject to an appeal to the Intermediate State Court, which rejected Powerex's argument that it was entitled to a demurrer under filed rate doctrine principles. That issue is now on appeal to the California Supreme Court. So there is ongoing litigation in the state court on the merits of the question. Our submission is that the remand was improper because there is subject matter jurisdiction in the federal court. Judge Burrell should have retained jurisdiction after he first found there to be jurisdiction under the original complaint, and he incorrectly held that Powerex was not entitled to stay in federal court under the FSIA. Following up on my colleague's question, did Powerex at any point seek to stay the state proceeding to allow the federal courts to reach the issue that I take it we're here about today? We did not seek a stay, Your Honor, because we appealed the original decision, and the issue was pending in the Supreme Court on our petition for writ of certiorari. The conditions for a stay, as you are, I'm sure, very familiar, are very difficult to meet in terms of irreparable injury and the like, and counsel did not feel that irreparable injury could be shown under the standards of the case law of this circuit. So we did not move for a stay, but we have continued to assert our litigation rights as an organ of a foreign state. I assume that if you are successful today as an organ of a foreign state, then you would move for dismissal, not stay, is that it? That's correct. Okay. Yes. But, Your Honor, I do want to be clear that we have acknowledged throughout that our activities that are subject to the suit are subject to the commercial activities exception to immunity for a foreign state. So our position is not that we are immune from suit, but that the suit should be in federal court, not in state court. This is, in effect, a lawsuit between the state of California and a province of Canada, and it belongs in federal court under the FSIA, even if there is not an immunity from suit under the commercial activities exception. In 1988, when PowerX was created, it was created by the directive of the Minister of Energy. That was a fact that the NRG Energy Panel did not consider. The purpose of PowerX is to maximize the natural resources created through the Two River Treaty, Two River Policy created by treaties between the United States and Canada, pursuant to which both countries agreed to put dams on the Columbia River and its upper tributaries for flood control purposes. And that power is all owned by the province of British Columbia, and the profits that PowerX earns all go back into the benefits of the province, either through rate adjustments for the rate payers, through subsidy programs under various acts. And the NRG Energy Panel was simply incorrect in saying that PowerX was maximizing profits for its own purposes. PowerX is 100% owned by a crown corporation, BC Hydro, which this court found to be not only an organ of a foreign state, but immune from suit. And that 100% ownership as a statutory agent of the province is an important factor in denominating the governmental control. Aren't you essentially arguing an end run around the Dole decision? I want to distinguish our two arguments, Judge Cowen, because on the no, I'm not. But I'm making two arguments here. One is that as a matter of organ status, the Dole case as it was decided by the Supreme Court only dealt with two-tiered majority ownership. As to our organ question, Dole does not speak to that. The Supreme Court's decision in Dole does not speak to that. On the majority ownership question, Dole did not address the question of how common law agency principles apply. It did say that common law corporate ownership tier principles apply. By parity of reasoning, it follows that agency principles also apply. By statute in British Columbia, BC Hydro acts as the province's agent. And when it was directed by the Minister of Energy to create a wholly owned subsidiary as an export agency, this is at excerpts of record page 57, it was doing so for the province itself. So the Dole question that's in this case is whether that agency relationship, BC Hydro, is in effect acting as the province in its ownership of PowerX. That question has not been decided by this court. It was not decided by the energy panel. So we think on two theories. We are entitled to status as an organ or instrumentality of a foreign state, the Dole majority ownership because it's 100% owned by an agent of the province, and because of the multiple factors that this court has found in such cases as EIE Guam, EOTT, the Gates decision, the creation purposes, expansion of public purposes, degree of government supervision, and the financial benefits that accrue all point in one direction, and that is that PowerX is serving a public purpose created by British Columbia for the benefit of the citizens of British Columbia. And under that standard, which this court has consistently applied up until the energy panel decision, PowerX would qualify. The panel, however, seemed to be diverted by a couple of factors that Justice Breyer found dispositive but which the panel itself did not, and if I could just address those for a moment. It found that PowerX was acting for its own profits. As a matter of fact, that is not correct. PowerX, all of the money that PowerX generates that is not retained for purposes of its ongoing operations are consolidated into the financial statement of BC Hydro and remitted to the province for purposes of setting rates established by the province itself or in funds that are used for the general treasury of the province. As Justice Breyer said, it would be unusual to have a government corporation that was not designed to generate a profit, but the key question is where does the money go and who benefits from that money? Unlike a private corporation where private shareholders would benefit from excess profits, here the province as a public entity, as a sovereign entity, is what is benefiting from PowerX's sales. Those sales are also through energy that's accumulated by a treaty between the United States and Canada, pursuant to which the United States agreed that certain power generated in the United States would be for the benefit of Canada, and the sale of that energy, it's called Canadian entitlement energy, is part of what is in PowerX's portfolio. But the bottom line here is that the province is the beneficiary of PowerX's activities. There are no private shareholders. There is 100% ownership by the province's agent, BC Hydro. The panel also in Energy Energy got, we think, off track by concluding that PowerX's lack of immunity from suit was somehow dispositive to this question. That is respectfully off topic. The FSIA requires that an organ be a separate legal person, and that ordinarily is denominated in statutes under sue or be sued clauses. But the fact that PowerX is a governmental entity and subject to suit does not speak to the question of whether it is an organ of a foreign state, and that organ status goes to its creation, its purposes, who its beneficiaries are, what public activities it is performing, what public purposes it is serving. Let me ask a question for my own clarification here. On the jurisdictional issue, your client's position is that they are entitled under the FSIA to be in federal court to assert their claims. To defend the lawsuit, yes. To defend the lawsuit. Yes. And I take it if the case is to be in federal court, among your positions would be the position that what's being debated about here today is really within the purview of FERC, and that's where this all ought to be. Yes, that's correct, Your Honor. However, that's not necessary, correct? That's a second way to get to federal court? Yes, that's correct. And on the first step, I take it that if it should be in federal court, then the federal court will be applying California law? Well, that To the, let me refine that, to the contract formation claims made by the state. Let me say yes, although our position is that those claims are preempted because I understand. And so, yes To the extent not preempted by FERC, the court would be applying California law to the California, the state of California, and the department's claims relating to the formation of the contract? Yes. Okay. However, I do want to point out, and Judge Smith, you put your finger on the nub of the second issue that we have here, which is whether or not inherent in the complaint is a federal question lurking. Their essential claim here is that there was market manipulation. FERC, however, for six years now, has been investigating claims of market manipulation. Their allegations in their complaint, on the face of their complaint, say that other people were engaged in market manipulation to create shortages. That is exactly what FERC has been doing and is within its realm because FERC investigates and enforces the tariffs pursuant to which wholesale interstate power commerce is conducted. So the fulcrum of their complaint is that actors out there creating shortages pursuant to which people engaged in manipulation is exactly what FERC is charged under the Federal Power Act with doing. So necessarily, their complaint raises a question of federal jurisdiction, and it is appropriate for federal courts to analyze those questions. But FERC doesn't award damages. To the contrary, FERC awards disgorgement of profits. It can award a just and reasonable rate refund. It can award civil fines and penalties. It has an arsenal. It doesn't award compensatory or punitive damages, though. Judge Count, it actually does it in a different way. It does it through disgorgement of profits, which is essentially a compensatory damage award. It does it through a giving of refunds in these circumstances created by the Federal Power Act. And those remedies are what Congress determined to be appropriate so that stability in the interstate power markets could be achieved because you wanted to give five minutes to the department. Yes. And I assume you wanted to save a little time for rebuttal. I don't want to stop you if you're I'm happy to stop at this point if the court All right. Thank you. I had one further question, but I was going to say, however, we have a case directly on point here where one three judge panel prior to us suggested that they were going to allow a leave to amend because they suggested that the only place there is that we should have this is not in FERC jurisdiction, but in our jurisdiction, where we're narrowly drafting our complaint to seek declaratory relief only as to issues of contract formation. And in those particular issues, they were talking about whether there was a mutual mistake or whether there wasn't. It seems to me I alleged in this particular complaint is the same kind of contract formation issues, because we all know in contract, one of the things you've got to have is intent. And there's four ways to get rid of intent. One is mutual mistake. But the second two are undue influence and duress, which are contract formation issues. And if I'm to follow another three judge panel, I have no authority to go outside of what they tell me, even if I disagree with them on even your best of arguments. If I follow them, I say any amended complaint must be narrowly drafted to seek declaratory relief only as to issues of contract formation, adequately drawn to do that. That's exactly what we have here. No damage is alleged, only declaratory relief, only as to contract formation. For the benefit of Judge Count and Judge Hawkins, Judge Smith is referring to a decision called Grace Harbor. And in that decision, the court found that the claims were barred by the filed rate doctrine, and it dismissed the complaint. It did. It did. It did say indicta, and it was saying that ordinarily when courts dismiss cases, it gives leave to amend and an opportunity to amend. So the statements that Judge Smith was referring to were in the context of stating the normal rule that courts allow leave to amend complaints. And given that amendment, it would stay in court and not be something that couldn't be done in federal court rather than in FERC. And in fact, the dissent said, you're absolutely wrong. So it wasn't an issue which was just dicta, but something that everybody was fighting about in that case. Well, no, it was dicta because the case didn't turn on it. But let me, I don't need to fight you on that, Judge Smith. Let me just say, if you agree with us on the Oregon status, you don't need to reach that question. But let me say, secondly, that the Grace Harbor panel did not have this particular complaint or any particular complaint in front of it. It was simply saying there are general principles of contract formation which, if properly pleaded, could perhaps be allowed to be in state court and would evade the filed rate doctrine. Our position here, though, is that their complaint raises directly a challenge to FERC's handling of market manipulation in the interstate wholesale markets. And its allegation of duress goes directly to the question of high prices. Because their point is that they were subjected to duress and had to pay more for power than they should have. That is a challenge to FERC's exclusive jurisdiction over the just and reasonable rates, if I could reserve the balance of my time. Okay. We'll hear from the Department at this time. Why don't you put five minutes on the clock, and I'll adjust California's time accordingly. I make pleas to court, Mark Stern, from the Department of Justice. And any time that I don't choose, I'll certainly cede back to Mr. Frederick, who generously ceded some of his time to the United States. We address here the issue of the Oregon status of PowerX. And I don't want to repeat all of the points that Mr. Frederick made. In that regard, the position of the United States is essentially in all fours with that of PowerX, that the major purpose of PowerX and its relationship to BC Hydro and the province, we think, puts it firmly within the scope of the Oregon prong of instrumentality. And again, Mr. Frederick made this point, that under the FSIA, it isn't necessary for courts to read the instrumentality exception narrowly in order to avoid an immunity from suit. I mean, Congress did two things when it moved beyond the Tate letter regime. It did several things, but one of them was it put the decisions in the courts. It made clear that there would be exceptions for commercial activity that would not be the basis for immunity and canceled and just consistently taken the position that the commercial exception to immunity would apply. Very different question is, what forum these claims are going to be litigated in? And there, we think that Congress broadly meant to bring in instrumentalities of the state, not only instrumentalities that had a majority ownership, that's one prong, but also the Oregon prong in which we look to a variety of factors, including purpose, control, and all of the basic components of that purpose and control ranging from who's got the beneficial ownership, where do the profits go back to, who appoints, the fact that the province appoints the board of BC Hydro, which in turn appoints the directors of Power X, the ongoing supervision of the province through BC Hydro of Power X, all of these factors, we think, make this sort of in a difficult area, I think is one of the easier cases. My colleagues who had a chance to think about this before in a Power X case would say, however, in Patrickson, they're citing Patrickson as the Dole food case, as here, the party claiming Oregon status under the FSIA was not run by government employees, was not staffed with civil servants, was not wholly owned by the government. They claim was not immune to suit.  I don't know whether immune to suit has anything to do with this, but they throw that in, was not immune to suit, and did not exercise any regulatory authority. Based on those tests, they said it's not an Oregon. What we think that the, I think the panel was addressing two questions, and one of them is whether under the majority ownership prong, which was the only issue that was resolved by the Supreme Court in Dole, and therefore could be the only issue that would properly be cited and relied on by the panel in NRG, the, I think that there was an argument that they were saying, no, a tiered kind of ownership, even though it's distinguishable from the very much at a removed kind of tier that was an issue in Dole, isn't going to be sufficient. So the Supreme Court didn't provide any guidance on Oregon in Dole, and when the panel went through the factors, I mean, the fact that it clearly can't be dispositive that it's not regulatory. I mean, the, it's 100% clear that instrumentality is meant to cover a whole variety of, I think, the legislative history sites, mining companies and trading organizations. Regulatory is definitely not a criteria, and indeed it has to be a entity that is independent of the government. So to say that it isn't regulatory, it's not staffed by civil servants and run by a government official, to some extent says, well, that's true, but that means it's not the government. I mean, the question of whether you come within Oregon means that you are a separate entity, that you probably, that you may well not be staffed by civil servants, but those factors aren't going to be dispositive. The next phrase said, and even though they offer, Power X offers some evidence that it serves a public purpose, its high degree of independence from the government, combined with its lack of financial support from the government and its lack of special privileges or obligations under Canadian law dictate our holding that it is not an organ. Well, with respect to the previous panel, we think that some of those statements are just based on a mistake in understanding of the record. And first, it's not clear what the high degree of independence as such is. We know that, and it's, I think, described at great length in the province's own brief, I think it's pages 23 through 26, all the full nature of the controls that are exercised, including the appointments of directors, ongoing auditing, and requirements that are really, that are not generally applicable to private corporations. The panel mistakenly seemed to think that the profits that BC Hydro, that Power X was getting were not, were sort of for its own sake. That clearly is not the case. I mean, the profits go back, it's all one statement with BC Hydro. The government can be on the hook for money, just as the money can come in to the government. And there clearly are various privileges and obligations. For example, I believe BC Power X is immune from taxation. It has to comply with the compensation requirements that apply to public officials, and in short, we think that the panel misunderstood the record in some key respects, and we think that ultimately the conclusion that Power X is an organ should prevail in this court. Okay, thank you for your argument. A little reminiscent of when Edward Bennett Williams owned the Washington Redskins, and he said, I gave Coach Allen an unlimited budget and he exceeded it. We gave you extra time and you exceeded it. We'll hear from California Department of Water Resources at this time. Counsel? Ms. Almendrez? Yes. Good morning. I'm Hannah Dahl Almendrez, appearing for the California Department of Resources, also referred to CDWR in the briefing. Now even though Power X counsel and the USDOJ have addressed the issue of organ status under the FSIA, as well as the issues under the Federal Power Act, I would suggest that the threshold issue here is whether this court has jurisdiction over this appeal. Although CDWR had stated in its answering brief that under then current case law, this court would have jurisdiction to review this appeal, intervening case law has suggested that remands under Section 1367C may not be reviewable. The Supreme Court had stated in Power X v. Reliant, which was issued just this summer, that nothing in the text of Section 1447C supports the proposition that a remand for lack of subject matter jurisdiction is not covered so long as the case was properly removed in the first place. So essentially, a case can be properly removed and yet suffer from a failing in subject matter jurisdiction that requires remand. When a district court remands a properly removed case because nonetheless there is no subject matter jurisdiction, the remand is covered by Section 1447C and thus shielded from review under Section 1447D. The Supreme Court also observed in Power X that when a remand is based on the district court's exercise of discretion to decline supplemental jurisdiction, it is far from clear that that remand is not subject jurisdictional. In other words, the Supreme Court was addressing remands similar to that remand addressed in the Carnegie-Mellon v. Coe-Hill matter. The Supreme Court noted in Power X, we have never passed on whether Coe-Hill remands are subject jurisdictional for purposes of post-1988 versions of Section 1447C and Section 1447D. So in this case, there is an issue of whether Judge Burrell's exercise of discretion under 1367C to remand the case back to state court is not subject to review by this court. However, doesn't Lee v. Beaumont and Niehaus v. Greyhound Lines and Executive Software v. U.S. District Court, don't they all hold that a district court's order remanding pendent state claims on discretionary grounds is then a discretionary remand of pendent state claims and a reviewable order? Well, I would submit, Your Honor, that the Power X decision, which was just decided this summer by the U.S. Supreme Court, raises the question of whether or not those types of remands are reviewable on appeal. But the Ninth Circuit says they are, so we're bound nonetheless. Well, the Supreme Court has decided in other cases that a federal court is always to question its jurisdiction to review an appeal. And that is the case here when we have a new case out of the Supreme Court which raises the issue of the appealability of a remand order under 1367C. And we also have a very recent case just issued two to three weeks ago out of the Federal F. Bio v. Youngshin Pharmaceuticals which addresses this point directly. And in that case, the Federal Circuit determined that a remand under 1367C is not reviewable on appeal because there is no subject matter jurisdiction. And therefore, under 1447C and 1447D, the review of that remand is barred. This case is fairly recent? It is fairly recent. It was just issued by the Federal Circuit on November 13th. Did you file a 28-J letter? We did, Your Honor. We filed that 28-J letter on November 29th. However, even the Federal Circuit saying what they do, I have a tough time knowing how I'm going to go past Ninth Circuit law which seemed to address that specifically, pendent state claims. This came up, the district court said we have subject matter jurisdiction, and then it was that they didn't have such jurisdiction. They could have kept the pendent state claims, and on a discretionary basis, they sent them off. And these cases, which are pretty specific, suggesting that in those situations, the district court's discretionary remand, now, we're talking about their discretionary remand of pendent state claims, is a reviewable order. That was in, we've had it in 93, 99, and 1994. That's our circuit's court's review. Are you suggesting simply because the Supreme Court has never said they have determined it, that I now have to redetermine what Ninth Circuit precedent is? Well, Your Honor, the Supreme Court has stated in PowerEx that this is an issue, and that it is an issue at the forefront. And with this recent decision out of the Federal Circuit interpreting the Supreme Court's statements in PowerEx, that such discretionary remands may be barred under 1447C and 1447D. Review of discretionary remands. Exactly. Those review would, I would suggest that the Ninth Circuit here should examine whether or not under the recent decision out of the Supreme Court, and the recent decision out of the Federal Circuit, whether those types of reviews are barred. We certainly will. Can we get to the merits of it, though? Assuming we have jurisdiction, why isn't PowerEx an agent or instrumentality of a foreign sovereign? Or organ. Or organ. Under this court's precedent, the determination is whether the entity engages in public activity on behalf of a foreign government. And in order to determine that, the court must look at six factors, including the circumstances of the entity's creation, the purpose of its activities, the independence or level of independence from the government, the level of governmental financial support, its employment policies, and what its rights and obligations under the foreign state's laws are. Now, even though the PowerEx decision out of the Supreme Court vacated this court's decision in California versus NRG Energy, that decision is still persuasive. We also have the district court's determination finding that PowerEx is not an organ under the Foreign Sovereign Immunities Act. How is that persuasive? There was no adjudication on the merits there. The factual findings are still persuasive, even though the decision was vacated. So even though it's not binding, the determination by previous panel that looking at the factors and applying the facts of PowerEx's purpose, its creation, and how it operates is still influential on this court. What do we do with Justice Breyer's comments? Just, well, Justice Breyer did not consider all of the six factors. He looked at the purpose of the entity and its level of activity, but I would submit that he did not look at all six factors and apply facts present in the record here. As a just practical matter, and I'm not for a moment suggesting that this is dispositive of the issue, but if the choices between a vacated Ninth Circuit decision and what a that's not a terribly difficult decision to make. Well, Justice Breyer's, I mean, I sort of take that as a red flag. If this case comes back, here are two votes that you can't get. Yes, Justice Breyer's opinion, though, was expressed in an assent, not supported by the majority of that court. In the California NRG energy decision issued by this court, there was unanimous opinion that PowerEx does not satisfy the organ requirements under the Foreign Sovereign Immunities Act because the six factors outlined in this court's precedent were not satisfied. And what Let me see if I can clear up something in my own mind. Suppose we're inclined to agree with PowerEx on the organ issue, but we're also persuaded by your argument that maybe this is something that we can't review. Where are we left? Well, we are left to proceed in the state court where the matter is currently pending. In other words, if we conclude that this remand order under 1367C is not something that we're empowered to review because of its nature, then we don't get to the organ issue? Yes, you do not get to the organ issue because review of the remand Even if we were to conclude that as a matter of law, PowerEx is correct in its assertion that it's an organ of a foreign entity and entitled to a bench trial in federal court of the issues as a matter of federal law. Yes, that is correct, Your Honor. If there is no appellate jurisdiction, then under 1447D, there can be, this case is remanded, it cannot be further reviewed, and any determination of the issues on this appeal could not be addressed. Is there a middle ground? I don't see a middle ground with a 1447D bar, Your Honor. Well, how about a remand to district court to ask it to determine if these state law claims that the department urges are entirely independent of any federal claim and therefore not preempted by FERC? Well, the lower court, Judge Burrell, had already determined that there was no federal issue remaining in DWR's amended complaint, and therefore, because state claims only remained, he exercised his discretion to remand DWR's action to state court. Well, I'm just trying to figure out, as a practical matter, where this goes. Let's say we agree with you. We send it back and we dismiss the appeal and instruct the district court to proceed with the remand. How is Power X to obtain appellate review of the legal issue of whether it's an organ or not? Through certiorari in the state court, of course, but isn't the middle ground really to deem the notice of appeal a petition for mandamus if we believe we don't have jurisdiction? Yes, I believe that is correct. All right, so we're back to the same question, whether it's a notice of appeal or petition for mandamus. Why isn't Power X an organ of a province? It's not an organ of a province because it hasn't satisfied the six factors articulated by this court in previous decisions. Does it have to satisfy all six factors? No, it does not have to satisfy all six factors. However, when you look at all of the facts and apply the facts as to Power X to those six factors, the weight of the evidence supports a finding that it is not an organ. Well, tick them off. Let's see each factor, why they don't satisfy or which factors are neutral. Certainly. For the circumstances of its creation, it was not created by legislation as in other cases before this court. It was created by a directive by the Ministry of Energy. What difference should that make? It was created by a public entity, though. It was not created by a commercial entity. It was created by a directive rather than by legislation or presidential directive as Incorporacion Mexicana. And so there is a distinction between the level of incorporation or creation where we have Power X, which was created under a law of general applicability in Canada for creation of corporations. Well, I would grant you that something created by a legislative body has a lot more punch, let's say, than something created by a board body or agency of government. But nevertheless, you've got to say it's a governmental agency. It's created by government, not by commercial proprietary persons or things. Certainly. I mean, the government, by whatever means, created this entity, did it not? It did by direction to BC Hydro to incorporate Power X. So why does that satisfy the first? It was created by a legislative body, but it was created by a governmental board body or agency. Yes, that's correct, Your Honor. And because this is just one of the factors, you need to look at the five other factors. Let's look at the other. Let's go into the factor two. Factor two is the purpose of its activities. Now Power X consolidates its revenues with BC Hydro. However, that practice of consolidation is just a generally accepted accounting practice and does not weigh in favor of finding that it serves some type of public purpose. Well, it's not, these monies are not being siphoned off for private purposes, private shareholders or non-governmental reasons, are they? There's nothing in the record to suggest that that's so. Well, then how can we conclude that it's not being used for public purposes? Well, Your Honor, one of the other factors is employment policies. Well, let's stay with factor two. I want to keep it separate if I can. Now, employees have a type of compensation program in which they are able to participate in a profit sharing bonus or have a bonus linked to profits of the entity Power X. And so that suggests that there is a profit-making motive and part of that profit goes towards bonuses paid to the employees of Power X. Well, what's the difference if governmental employees, state employees, are paid through the treasury of the legislature or through some other form, for instance, like the Tennessee Valley Authority and the various authorities which we have are not paid out of the treasury of the United States. They're paid out of the authority which is created by the government, but they're nevertheless paid by a governmental process. So why wouldn't factor two, how is that way in your favor and against Power X? Look, even the government has to employ, has to pay people who are on civil service and they're paid right out of the treasury of the United States. But the United States creates a lot of entities which pay the government workers but not out of the treasury of the state or federal government. Added to that, that all of its profits go with the government and cause it to not have more taxes because it doesn't go anyplace, the government just uses whatever profit it That's Judge Cowen's question. Certainly and what the record also suggests is that not all of its revenues are dedicated to the province. Power X does not rely solely on BC Hydro's surplus power to operate its enterprise. In fact, the record also suggests that the entitlement, Canadian entitlement, which Power X uses is a portion of its portfolio, so it is like any other energy marketer in the wholesale markets for electricity, where it amasses a portfolio and is operating to maximize the profits under that portfolio. And as this court determined in the California versus energy matter, that suggests that Power rather than serve a public purpose. Yeah, but doesn't anything, like take the port of New York Authority, administers a tremendous business, tunnels, bridges, gigantic business. But they operate it like a business because of course they want to have the benefits of having the benefits of a well-run, efficient business organization. And isn't that good for government to have its agents or organs run in a good business-like fashion so that it maximizes profits, which ultimately are for the public good? So what difference does it make if they operate like a corporation? The idea is where the money goes that they're making and doesn't it go to the public will? Yes, that may be correct, Your Honor. And I would also suggest that in the Gates matter, the entity under review there is very similar to the Port Authority that you mentioned. And in that case, in Gates, the Alberta Pork Board operated to control the pork market in Canada, but it also had regulatory responsibilities. And so that is very distinct from what we have here, where PowerX is solely maximizing its profit, operating on a commercial basis. It does not have any regulatory authority. It has a high level of independence from the government. In fact, its board does not report directly to the province, but to BC Hydro. So we are a step below from reporting to the government of the province. Well, yeah, but that's the idea for creating all of these entities below the government. They don't want civil servants operating these. They claim government doesn't do it well. It can be done better without having civil servants do it. They can do it through authorities. And that's the choice government makes, not to have it done by civil servants, have it be done by independent agencies. Let's go to the next. I think we beat that one pretty good. What's the next factor? We have the level of independence from the government. And as I alluded to, PowerX has a high level of independence from the government because it is not subject to the type of active governmental control that this court has previously found persuasive in Gates. This factor interests me. Given the allegations that are made in the complaint about the decisions engaged in by PowerX, did anyone above the company itself, above PowerX itself, have to approve those decisions? We have not engaged in any discovery which would suggest that that occurred. However, what we do know is that PowerX management determined how it would market its power that it had in its portfolio, at what price, at what location. And so based on what we know so far, we are under the impression that PowerX management solely determined how it was. They didn't have to ask the provincial governor in British Columbia whether it was okay to, this is your allegation, hold California up for exorbitant prices. We don't have any indication. Internal management of PowerX made that decision. Well, we haven't. As far as you know. As far as we know at this point, we have no indication that that occurred. Let me ask this question. Suppose we conclude that we do have jurisdiction by the vehicle of Mandamus or otherwise and that we're persuaded that PowerX is an organ and we send it back to district court to either determine how to proceed from there. The district court would be fully empowered to apply California law to the department's contract formation claims, would it not? Yes, that's correct. And would it also be fully empowered to determine whether those claims can be resolved independent of any bumping up against FERC? Yes, that is correct, Your Honor, and that is consistent. And my understanding is California's position is once the contractual formation issues are decided, you believe that the jurisdiction then goes to FERC to determine what relief. Exactly. That's the department's position. That is correct, Your Honor. It is consistent also with this court's decision in Grays Harbor. Returning to the independence of PowerX, the board of directors, what is the top tier of PowerX referred to as a board of directors? It's a board of directors, I think, isn't it? Yes, a board of directors. They are designated as directors by the government, though. They're appointed by government officials. They are appointed by B.C. Hydro's board of directors. Okay, which in itself is subject to appointment by government officials, correct? That is correct. So that ultimately you have business decisions being made by an independent entity whose decisions are filtered down through government designees. Is that correct? That is correct, and I think you hit on the right word. It is filtered down. There is no direct control by the government. Obviously, it's not direct. But you can't say that they are a loose cannon, that they're independent of government, because if the government doesn't like their decisions, they can remove the director who they think is not competently discharging the mandate that he's been put there to do. Is that correct? That is correct, and I would also suggest that this case is very similar to Patrickson, or excuse me, yes, Patrickson, where the court determined that even though the entity in question there was highly regulated, it still had a high level of independence from the government, and Patrickson, or in that case, the court determined that the entity was not an organ under the FSIA. So we have very similar aspects here comparing PowerX to the entity in Patrickson. Our questions have taken over your time, even the extra time that I allotted. Would you like to take a minute and wrap up? No, I think I will submit, Your Honor. Okay, thank you very much for your argument. Appreciate it. Rebuttal? Two minutes? Yeah, a little over two minutes. Counsel? Your Honor, we submitted a responsive 20HA letter on the appellate jurisdiction question, but if there are further needs for briefing, we would urge the court to direct the parties to brief the issues. They are very complex issues. But let me start with Judge Smith, your question. Hultine v. AT&T, an en banc decision of this court in 2007 at 498 F. 3rd, 1001, Penn Site, 1009, says, a three-judge panel must follow prior circuit precedent unless a subsequent decision by a relevant court of last resort either effectively overrules the decision in a case closely on point or undercuts the reasoning underlying the circuit precedent rendering the cases clearly irreconcilable. The sentence that she's quoting in the Supreme Court decision in PowerX does not make this clearly irreconcilable. It raises a question where the court says we have not addressed this issue. Now, it is true that the federal circuit has come along and taken that statement and said the law of our circuit, where the federal circuit had never addressed the question before, is now going to be in these supplemental jurisdiction discretionary remand situations. We are not going to exercise appellate jurisdiction. But the law in this circuit could not be clearer. And the federal government in its brief and in our 28-J letter, we cite the most recent decision by this court from a year ago, Williams, which was decided after we had finished the briefing in this case. Williams could not be clearer on point that where the district court had subject matter jurisdiction on the original complaint and amended complaint took out the federal question, the discretionary remand occurred on the basis of a defective claim as to what the remand procedural requirements were. This court said it had appellate jurisdiction and it could reverse because there was clearly subject matter jurisdiction on the basis of diversity jurisdiction. If I could just carry on one more moment. Judge Hawkins, I appreciate the court's patience. This is a critically important issue on the basis of two sovereigns. The California government here cannot come to any firm rebuttal to Justice Breyer's persuasive opinion as to why PowerX is an organ of a foreign state. She goes through all of the different factors, but it's clear PowerX is performing functions at the public. The only real question the panel has is are you going to follow your binding circuit precedent on appellate jurisdiction and then reverse and remand on the ground that there is subject matter jurisdiction or will you take that sentence of the Supreme Court's decision and decide to change the course of circuit law? The en banc court here has spoken. We think the court does have jurisdiction and that the case should be reversed and remanded. Thank you. Thank both sides for their argument. This is a very interesting case. We appreciate the preparation that went into the arguments and it's submitted for decision and if we feel we need help on any of the issues, we'll certainly ask for supplemental briefing from all parties. Okay, thank you. Thank you.
judges: Hawkins, Smith, Cowen